IRA N. PAVEY, RESPONDENT, v. LONDON AND PROVINCIAL MARINE AND GENERAL INSURANCE COMPANY, LTD., APPELLANT.*

Kansas City Court of Appeals. December 6, 1926.

*Corpus Juris-Cyc References: Contracts, 13CJ, p. 525, n. 38; Evidence, 23CJ, p. 47, n. 35; Fire Insurance, 26CJ, p. 519, n. 75; Insurance, 32CJ, p. 1148, n. 30.

*C. W. Crossan, John A. Boyer* and *C. C. Crow* for respondent.

*Easten & McNeely* for appellant.

ARNOLD, J.—This is an action to recover upon a policy of fire insurance issued by defendant on January 27, 1925, in the sum of $3500, whereby defendant insured for a period of one year a stock of groceries and fixtures, as described in the policy, against all direct loss or damage by fire, in the above-mentioned sum.

The facts of record are that defendant is an insurance company duly licensed and authorized to do business in the State of Missouri, and was so operating in this State at the time the policy herein was issued; that some time prior to the fire and before the issuance of the policy herein, plaintiff purchased a stock of groceries and fixtures

located at 4031 Troost avenue, Kansas City, Mo.; that, after being operated for some months at this address as a combined grocery and butcher business, the stock was moved to No. 4014 State Line street, which is on the line between the States of Missouri and Kansas, the new location being on the Kansas side of the street. The store was operated for a few months at this place and the insurance policy in suit was issued during that period.

On April 23, 24 and 25, 1925, the stock of merchandise covered by the policy as claimed by plaintiff, was moved into a one-story brick building forty feet long by twenty to thirty feet wide, with concrete floor, located at 7123 Prospect avenue, Kansas City, Mo. By proper indorsement of defendant, the insurance was made to apply at the new location. It appears the stock was moved by plaintiff's son-in-law, one McGuire, in a Ford touring car and thus two or three days were consumed in the removal. The fixtures so moved were placed in the building at the new location and the merchandise piled upon the floor, awaiting proper placing of shelves and other fixtures.

On April 25, 1925, the night upon which the moving was completed, between the hour of eleven o'clock P. M. and midnight, a fire of unknown origin occurred in the room where the merchandise and fixtures were located. A fire company responded from a station a short distance away and within a minute and a half members thereof appeared on the scene, attached a hose and turned a stream of water on the fire. By this means the worst of the flame was extinguished and the fire was completely subdued by the use of chemical hose. It appears the most inflammable portion of the stock consisted of toilet paper and matches.

On the night of the fire plaintiff left to go to Illinois on account of the death of a relative and went to the union station at about 6 to 6:30 P. M. Instead of going to Illinois, however, he stopped in St. Louis where he remained until he received a telegram about one week later telling him of the fire, whereupon he returned to Kansas City. It appears that on his departure for Illinois, he placed the key to the store in the hands of his son-in-law McGuire. Plaintiff's wife, who had been in Illinois, returned ahead of plaintiff and placed the adjustment of the loss in the hands of an adjuster for the insured, one Crossan. The place remained open that night and part of the next day after the fire, the front windows being broken and the stock exposed. There is testimony tending to show that between midnight and morning after the fire some of the stock was removed by an unknown man and woman and taken away in a Ford automobile.

An inventory, introduced in evidence, made a day or two after the fire by a representative of the adjuster for the insured and Mrs. Koons, daughter of plaintiff, showed identifiable merchandise of the value of $496.68, which was sold in bulk as salvage for $100. This net

amount, or $396.68, defendant paid plaintiff, together with an item of $23.50 for expenses in boarding up the shop windows. Defendant also paid plaintiff the sum of $865.75, as agreed upon as total damage to the fixtures, making a total payment of $1285.73. Defendant refused to pay the difference between the value of the stock before the fire as alleged by plaintiff and the value of the damaged stock found after the fire as then inventoried.

It is in evidence that immediately prior to the removal from the State Line number to the Prospect avenue address where the fire occurred, plaintiff's daughter Mrs. Koons who aided her father in the purchase of new stock and in the management of the store, invoiced the stock at cost price. This invoice, however, had been lost or misplaced and does not appear in evidence. Mrs. Koons testified she was familiar with the stock and its value and estimated it at $1400 to $1500. Testifying on this point plaintiff placed the value of the stock at $1667.76, basing his estimate on the total made by him of the invoice taken by Mrs. Koons, the cost price of each item of which she had extended but not totaled.

There is testimony of record tending to show that after putting out the fire the fire department cleaned the rubbish out of the room and put it on a rick in the space between the sidewalk and the curb; made a pile also at the rear of the store room and later some of the stuff was ordered dumped into the river by the food inspector of the city.

The petition alleges that plaintiff's stock and fixtures were insured by defendant against loss by fire in the sum of $3500, making the policy a part of the petition; alleges destruction of the property by fire on April 25, 1925, and placing a value thereon of $3607.10 and putting plaintiff's loss at $2389.25; alleges that proof of loss was duly made on May 29, 1925, and that by the terms of said policy the claim was due and payable on May 29, 1925; admits that defendant has paid plaintiff on account of said loss the sum of $1285.73, and claims there is still due thereon $1103.52. The prayer is for this sum and interest, together with ten per cent for vexatious delay and for $500 reasonable attorney's fee.

The answer also pleads the policy in question; admits consent to the removal of the stock and alleges that by the fire in question plaintiff's loss was $1285.73 only, which, under the terms of the policy was the extent of defendant's liability; avers the payment to plaintiff of said sum and denies generally all other allegations of the petition, including vexatious delay. The answer further states that by the terms of the policy defendant did not insure against loss by theft or neglect to use all reasonable means to save and preserve the property after the fire occurred; and that it has fully paid plaintiff all of the loss or damage covered by the terms of the contract; and

states that if plaintiff has suffered other loss it was from theft or other causes not covered by the policy.

Upon the pleadings thus made the cause went to trial to a jury, resulting in a verdict for plaintiff in the sum of $1103.52 and interest at six per cent from July 29, 1925, amounting to $46.70. Judgment was accordingly entered in the total sum of $1146.22. A motion for a new trial was ineffectual and defendant has appealed.

At the close of plaintiff's case and again at the close of all the evidence, defendant asked and the court refused a peremptory instruction in the nature of a demurrer. It is insisted the court committed error in so ruling. This charge is based largely upon a clause in the policy as follows:

"This company shall not be liable for loss caused directly or indirectly by invasion, insurrection, riot, civil war or commotion or military or usurped power or by order of any civil authority, or by theft; or by neglect of the insured to use all reasonable means to save and preserve the property at and after the fire," etc.

It is argued that the clause just quoted, having expressly exempted the company from loss by theft, defendant was liable only for the property damaged by fire, and not for goods stolen from the premises after the fire. This contention is based upon the testimony of one Charles A. Jones, owner of a bakery in an adjoining room to the one where the fire occurred, to the effect that he was present at his bakery on the night of the fire both before and after its occurrence, and that between midnight and morning, a man and woman whom he did not know, removed in bushel baskets quantities of goods from the room where the fire took place, and hauled them away in a Ford car. This witness further stated that at the time he was going on crutches from a broken leg and that he instructed the baker in his employ and who was present at the time, to secure the license number on the automobile which he did and thereafter gave the number to the witness. The witness testified that he refused to give this number to Crossan, agent for the assured, and that he did not report the circumstance to the police; nor, does it appear that he made any attempt to identify the parties who took and hauled away the goods.

It is claimed by defendant that Crossan, adjuster for plaintiff, admitted that part of the goods had been stolen. Testifying for plaintiff, Crossan denied such admission, but in view of the testimony of Jones (defendant's witness) Crossan said he stated to defendant's adjuster that he (Crossan) would join him in an attempt to ascertain the facts in this respect; that he could not say the goods had been stolen, nor did he say they were not stolen; they could not agree because they did not know; that part of the goods were burned. "If they were stolen," he said, "I had no evidence of it, nor did the adjuster for defendant."

"Q. Part of the goods you got no track of whatever, and you and he were at all times agreed upon that, were you not? A. We could not agree upon that.

"Q. That is to say you never did either of you get any track of that stock except what was in that inventory marked 'Defendant's Exhibit A' and that was valued at the cost price of $496.48? A. That is all Mr. Harris and I ever agreed upon any loss. . . .

"Q. It was all that was ever found and all that was ever disposed of by you? A. All that was ever disposed of—

"Q. All that was ever found by you? A. By me, yes.

"Q. Or anybody else you know of—A. Well, I would have to guess at that, but I would guess in your favor."

This witness testified that he made demand for payment of the balance of the total amount of the loss of $1103.52 which was refused, and it was agreed that this amount should be litigated. As stated, there was testimony tending to show that certain of the goods were hauled away after midnight of the fire. It is in evidence that the windows thereafter were boarded up.

The particular question presented by this phase of the case is whether or not, under the terms of the contract, defendant is liable for the goods stolen—if they were stolen—between midnight of the date of the fire and the next morning. There is no charge that they were stolen after that. The general rule on this point is laid down in 26 C. J., p. 342, par. 433, as follows:

"Unless the insurer is expressly exempted from liability therefor, the loss of goods by theft during or as a result of the fire, or during the removal of the goods to save them from loss by fire, is covered by the policy." [Newmark v. Ins. Co., 30 Mo. 160, 77 Am. Dec. 608.] In the Newmark case our Supreme Court held, in effect, that the liability of an insurance company for losses by thefts occurring during the continuance of the fire is not restricted to such losses occurring during the continuance of the fire merely, but if the loss by theft be occasioned directly by the fire, the insurer will be liable though it happen after the fire is extinguished. There is evidence tending to show that the goods, if stolen, were taken after the fire was extinguished by the fire department and before the following morning. In further consideration of loss by theft the following appears, par. 438, p. 344, 26 C. J.:

"An exception exempting the company from liability for loss caused by theft, which is now found in standard policies relieves the company from the liability which would otherwise rest upon it, to pay for property stolen during the progress of a fire, or during the process of removal of the property necessitated by the fire, although it has been held that where the clause merely excepts 'loss by theft,' it does not include loss from that cause during a necessary removal

of the property. Such a restriction, however, has been held to be incompatible with the requisite that the insured shall use all reasonable means to save his goods from impending destruction or damage by fire. The plundering of an insured building by a mob during a fire does not fall within an exception as to 'fire or breakage during the removal.' "

Some authorities hold that if the contract specifically provides that the insurer will not be liable for loss of insured's goods by theft, though directly due to the fire, there can be no recovery for such loss. [14 R. C. L., par. 394; Insurance Co. v. Cuff, 29 Okla. 106, 116 Pac. 435, 35 L. R. A. (N. S.) 892 and note.] In this jurisdiction it has been held that in a policy containing the proviso: "Provided, always, and it is hereby declared that this company shall not be liable to make good any loss by theft, or any loss or damage by fire, which may happen or take place by means of any invasion, insurrection, riot or civil commotion or of any military or usurped power," the clause protecting the company against any loss by theft, is independent of the one immediately following it. [Webb v. Ins. Co., 14 Mo. 4.]

In the Webb case the court, speaking through NAPTON, J., at p. 9, say:

"The object of the policy is to secure against losses by fire, and any loss by theft not attributable directly to the fire, would not be within the contract, and when the company exempt themselves from liability for fires which happen by reason of invasions, etc., it is superfluous to add that losses by theft occasioned by such fires would also be without the protection of the policy."

The exemption clause in the policy in suit in the Webb case is essentially the same as here presented. There is positive proof here that certain goods were stolen from the stock covered by the policy, and there is nothing directly contradictory of this proof. The contract of record shows that the policy specifically exempts loss by theft. It is the duty of the court to construe such contract, although the result may be to diminish the value of the security offered by the terms of the policy. It is for the parties to make their own contracts and the courts have no power to grant relief against injudicious contracts, unless, of course, upon the ground of mistake, fraud or some other grounds not claimed to exist herein. The rule applied in the Webb case is adhered to in Newmark v. Ins. Co., 30 Mo. 160, also an opinion by NAPTON, J.

It is admitted by defendant that it had the burden of showing that part of the goods for which plaintiff seeks to recover were stolen and not destroyed by fire, and this burden defendant claims was met in the testimony of Jones, and the burden then was upon plaintiff to rebut such testimony. There is no showing of record that plaintiff

attempted such rebuttal. While it is true the evidence of Jones was to the effect that he saw goods being taken away from the store after the fire and which had not been destroyed thereby, the record fails to disclose that plaintiff even attempted to meet this requirement.

It was not necessary for plaintiff to introduce any evidence tending to show that part of the goods were not stolen, because the question of whether or not there was a theft was a matter of defense and the jury was entitled to believe or disbelieve defendant's evidence on this point. [Gannon v. Gas Co., 145 Mo. 502.]

For reasons above stated, the judgment is affirmed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.